730 So.2d 474 (1999)
DRP, INC., d/b/a Uptown Auto Specialist
v.
Elizabeth BURGESS and Riverland Credit Union.
No. 98-CA-1541
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1999.
Robert G. Rivard, New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Richard K. Dimitry, New Orleans, Counsel for Defendant/Appellee.
Court composed of Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS Sr.
*475 BAGNERIS, Judge.
Plaintiff appeals a judgment denying it storage fees for the prolonged storage of a customer's vehicle. For the following reasons we affirm the trial court in part and reverse in part.

FACTS
On March 19, 1993 Elizabeth Burgess left her vehicle with Uptown Auto Specialist (UAS) for diagnostic purposes and a repair recommendation. On March 22, 1993 Paul Cosma, president and employee of UAS, contacted Burgess and informed her that the cost of the diagnostic work totaled $327.00; in addition, he informed her that her vehicle required extensive repair work.
Despite numerous attempts by Cosma to have Burgess make a decision about the repairs and/or remove the vehicle, Burgess did not retrieve the vehicle until December 30, 1994. On this day, in exchange for her vehicle, Burgess remitted a teller's check to UAS in the amount of $6,716.90 drawn by Riverland Credit Union (RCU) on Southwest Corporate FCU naming UAS as payee. Burgess was not a party to the check.
On or about January 3, 1995 Cosma deposited said check into UAS's account with Whitney National Bank. Shortly thereafter, Cosma received notice from Whitney that a stop payment order had been issued by RCU on the check. In addition, Whitney informed Cosma that an $18.00 service fee had been assessed against UAS.

PROCEDURAL HISTORY
UAS sued Burgess and RCU for breach of contract, enforcement of compromise and non-payment of teller's check. UAS sought to recover $6,734.90 (the amount of the check and fees); loss of past and future interest; and attorney's fees.
Burgess failed to file an answer or make a general appearance. After attempting service on Burgess numerous times, UAS moved to dismiss her without prejudice, which was so ordered on July 17, 1995.[1]
After RCU filed its answer denying liability, UAS moved for summary judgment alleging that under Louisiana law RCU could not stop payment on the check, and that such an action, if taken, would subject RCU to liability. Furthermore, UAS alleged that RCU could only assert defenses related to the instrument, not those that were personal to Burgess.
RCU answered the motion claiming that under La. R.S. 32:1719-1720 UAS forfeited its rights to storage fees, thus RCU had incurred no liability. The trial court dismissed UAS's motion.
After a trial on the merits, the trial court entered judgment in favor of UAS for $345.00, an amount representing $327 for diagnostic work and $18.00 for bank fees. However, the judge denied the award of storage fees finding that UAS did not comply with La. R.S. 32:1720.
UAS appealed and assigns the following errors: 1) the trial court erred in allowing RCU to assert a defense not available to it under Louisiana Negotiable Instruments law; 2) the trial court erred in allowing RCU to assert a defense which it had not affirmatively pled; 3) the trial erred in concluding that RCU bore its burden of proof that UAS committed an illegal act.
Because this Court finds that the trial court erred when it applied La. R.S. 32:1720, on which RCU relies to defeat plaintiff's claim, we will pretermit discussion of whether RCU properly asserted an affirmative defense.

DISCUSSION
A teller's check is a negotiable instrument which one bank draws on another bank. La. R.S. 10:3-104(h)(West 1999). There is little guidance under Louisiana law to which the court can turn to determine the instances when a bank, or in this case a credit union, can legally order a stop payment on such an instrument.
Prior to January 1, 1994, the date on which legislative changes to the UCC as adopted by Louisiana became effective, stopping payment *476 on a teller's check without notice to the payee was permissible. See, David v. First National Bank of Commerce, 94-1724 (La. App. 4 Cir. 2/23/95), 650 So.2d 1227. However, since David, La. R.S. 10:3-411 was enacted to address situations where an obligated bank refuses to pay a cashier's check, teller's check or certified check. Section (b) of this statute provides in pertinent part:
If the obligated bank wrongfully (emphasis added by the writer) ... (ii)stops payment of a teller's check, ..., the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of the particular circumstances giving rise to the damages. La. R.S. 10:3-411(b) (West 1999).
Section (c) extinguishes this liability if the obligated bank asserts a claim or defense of the bank (emphasis added by writer) that it has reasonable grounds to believe is available against the person entitled to enforce the instrument. La. R.S. 10:3-411(c) (West 1999).
As noted above, there is little jurisprudence to which this court can look for guidance regarding the wrongful termination of a teller's check. However, the 1990 Uniform Commercial Code Comment, which accompanies 3-411, indicates that 3-411 is designed to deter the practice of stopping payment on a teller's check. Comment (1) states that a bank who sells a teller's check has no duty to order the bank on which the check was drawn to stop payment. Furthermore, this comment states that a debtor using a teller's check has no right to stop payment, but nevertheless, some banks will accommodate such a request. Comment (3) states that in situations when a bank refuses to pay, the bank may assert a defense that it has, but normally there is no such defense. More important, this comment makes it clear that a bank may assert a defense of the remitter, in this case Burgess, only if the bank complies with 3-305(c).
Section 3-305(c) states in pertinent part that an obligor may not assert a third party's defense against the person entitled to enforce the instrument, unless the third party is joined in the action and personally asserts the claim. La. R.S. 10:3-305. (West 1999). Although Burgess was joined in the action, she has not asserted any claim or defense against UAS. Contrarily, the record indicates she has intentionally evaded this action, as service on Burgess of the original petition and the third-party petition was impossible. Thus, under 3-305 RCU should be barred from asserting any defense that is personal to Burgess.
The record indicates that at the time RCU ordered a stop payment it did so to "accommodate" Burgess's request, and that she had "changed her mind" because she believed she would not receive her car in exchange for the check. As testified by Ms. Irby, RCU's President and CEO, the instances when RCU would honor a stop payment request depended on the circumstances, usually such a request was made when the check had been lost or stolen. Ms. Irby also noted that when RCU stopped payment on the check RCU had no knowledge whether or not Burgess retrieved the car. (This court notes that if RCU had such knowledge it would have known that Burgess had in fact retrieved her car in exchange for the check.)
In addition to its defense of "accommodating" a customer's request, RCU asserts that it had the right to stop payment on the teller's check because UAS was in violation of La. R.S. 32:1719, 1720 and 1726.
La. R.S. 32:1711, et al, entitled "Louisiana Towing and Storage Act", was enacted "to promote the public interest and the public welfare" by regulating and licensing those who conduct towing and storage businesses in Louisiana, "in order to prevent fraud, impositions, and other abuse upon its citizens, and to provide maximum safety for all persons who travel or otherwise use the public highways of this state." La. R.S. 32:1711 (West 1998). Specifically, § 1719 and §1720, on which RCU relies, require that when a vehicle is placed in a storage facility the operator must notify the Department of Public Safety and Corrections and the owner of the vehicle within a specified period. La. R.S. 32:XXXX-XXXX (West 1999).
*477 Although RCU asserts that it had a right to stop payment on the teller's check because UAS violated these statutes, it has not presented evidence that UAS is in the "business" of either towing or storing vehicles. Contrarily, as Cosma testified, UAS is in the business of repairing cars, not storing them.
Read in toto, this court finds that the trial judge abused its discretion when it subjected UAS to the requirements of the "Louisiana Towing and Storage Act." To obligate an auto mechanic to comply with this Act, in this court's opinion, would expand the true purpose of this Act, as it is stated above. Moreover, to impose this Act on companies such as UAS would be extremely burdensome on such companies whose business is in the repair of motor vehicles, not that of storage.[2]
RCU has not asserted any other legally viable defense to protect itself from liability under La.R.S. 10:3-411(b) and (c), thus we find that RCU's actions in stopping payment were wrongful, and it is liable to UAS for payment of storage fees.
La. C.C. arts. 3224 and 3225 confer upon an automobile repairman a privilege on the vehicle. These articles have been interpreted to include storage fees. See, Milam Realty Co. v. Jones, 7 So.2d 405 (La.App. 2 Cir.1942). Lake Charles Nissan v. State Farm, 590 So.2d 614 (La.App. 3 Cir.1991), Babington v. Stephens Imports, Inc., 421 So.2d 275 (La.App. 4 Cir.1982). The evidence presented at trial indicates that UAS charged Burgess a fee of $14.00/day for storage, which appears to be excessive in comparison to the amounts awarded in Lake Charles and Babington. Moreover, it is unclear from the record as to how many days UAS is entitled storage fees.
Therefore, we affirm the trial court's award of $345.00 for diagnostic work and bank service fees to UAS, and reverse the finding that UAS is not entitled to reasonable storage fees. Further, we remand for calculation of reasonable storage fees for a reasonable time in accordance with Lake Charles and Babington. In addition, the trial court is ordered to include in its award interest and attorney's fees as allowed by La. R.S. 10:3-411(b).
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Burgess was later added as a third-party defendant in a supplemental answer filed by RCU; however, service on Burgess was fruitless.
[2] Furthermore, we note that even if this Act could be asserted by RCU as a defense, there is serious doubt whether RCU would be entitled to assert it under La. R.S. 10:3-305(c), as it appears to be a defense that is personal Burgess.